UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Stephanie F., <br><br> Plaintiff, <br><br> v. <br><br> Leland Dudek[1], Acting Commissioner of Social Security, <br><br> Defendant. | Civil No. 3:24-CV-00569 (MEG) <br><br><br> March 17, 2025 |

## RULING ON PENDING MOTIONS

Plaintiff Stephanie F.[2] ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner"), rejecting her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). ECF No. 17. She seeks an order vacating the Commissioner's decision and remanding the case for further proceedings. ECF No. 1. The Commissioner seeks an order affirming that decision. ECF No. 25.

For the reasons detailed below, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 17) is **GRANTED** and Commissioner's Motion for an Order Affirming the Decision (ECF No. 25) is **DENIED**.

---

[1] When Plaintiff filed this action, she named the then-Commissioner of the Social Security Administration, Kilolo Kijakazi, as defendant. Compl., ECF No. 1. Commissioner Kijakazi no longer serves in that office. Her successor, Acting Commissioner Leland Dudek, is automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the caption of the case accordingly.

[2] Pursuant to D. Conn. Standing Order CTAO-21-01, Plaintiff will be identified solely by first name and last initial throughout this opinion.

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On January 10, 2022, Plaintiff filed an application for DIB benefits under Title II and protectively filed a Title XVI application for SSI, alleging a disability onset date of February 10, 2021. Tr. 40, 88. She claimed that she could not work due to "Fibromyalgia and Migraines." Tr. 89, 96. Her applications were denied initially on May 2, 2022, and upon reconsideration on August 26, 2022. Tr. 88-94; 95-101; 102-116; 117-130. On January 26, 2023, the ALJ held an online video hearing at the request of counsel. Tr. 35-73; 76-79.

On March 24, 2023, the ALJ issued an unfavorable decision. Tr. 37-59. The ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims and ALJ Ryan Alger's written decision followed that format. At Step One, he found that Plaintiff had not engaged in substantial gainful activity since February 10, 2021, her alleged onset date, and that she meets the insured status requirements of the Social Security Act through December 31, 2024. Tr. 43. At Step Two, he found that Plaintiff suffers from the severe impairments of "obesity and fibromyalgia," but that her migraine headaches, anxiety, and depression were non-severe. Tr. 43-45. At Step Three, he concluded that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.[3] Tr. 45. He then determined that, notwithstanding her impairments, Plaintiff retained the residual functional capacity to:

---

[3] The ALJ found at Step Three that Plaintiff's impairments did not meet or medically equal Listing 1.15 for disorder of the skeletal spine resulting in compromise of a nerve root, or Listing 1.18 for abnormality of a major joint. Tr. 45-46. These findings are not in dispute. However, Plaintiff maintains that the ALJ should have considered whether her headache disorder medically equaled listing 11.02 paragraphs B or D. ECF No. 17-1 at 5-14 (citing SSR 19-4P; Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635 (SSA Aug. 26,2019)).

> [P]erform light work as defined in 20 CFR 404.167(b) and 416.967(b) except she can occasionally climb stairs and ramps and no climbing ladders, ropes, or scaffolds.

Tr. 46. At Step Four, the ALJ found that Plaintiff was capable of performing past relevant work as a hotel clerk and counter attendant and that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR §§ 404.1565 and 416.965). Tr. 51. Finally, at Step Five, relying on the testimony of a vocational expert ("VE"), the ALJ found that, in addition to past relevant work, considering Plaintiff's age, education, work experience, and residual functional capacity, she is capable of performing other work, such as a cashier, a sales attendant, and a fast food worker, that exist in significant numbers in the national economy. Tr. 51-52. Accordingly, the ALJ determined that Plaintiff was not disabled from February 10, 2021, the alleged onset date, through March 24, 2023, the date of the decision. Tr. 53.

*Appeal to the Appeals Council and Additional Evidence*

Plaintiff appealed to the Appeals Council and submitted additional medical records from Hartford Healthcare dated August 3, 2023 to January 26, 2024, (Tr. 8-23) (13 pages); and a Medical Source Statement from her primary care provider, Dr. Marc Raad, dated July 24, 2023 (Tr. 24-26) (DDS Employment Services Medical Exemption Report) (3 pages).[4] Tr. 2.

The January 26, 2024, treatment note from Dr. Cahill included a new diagnosis of intracranial hypertension, or IIH, and a treatment plan based on a recent neurological assessment

---

[4] The medical record from Hartford Healthcare, (Tr. 8-23), included a treatment record from Dr. Hugh Cahill dated January 26, 2024 (Tr. 8-12), an after visit summary from an emergency department visit dated January 17, 2024, for headache, rash and facial pain, (Tr. 13), an after visit summary/post-operative report for a thyroidectomy dated August 3, 2023, (Tr. 17-20), and an MRI Spine Lumbar report dated November 6, 2023 (Tr. 22-23).

3

and testing.[5] Tr. 8-12. The doctor noted that Plaintiff's symptoms began around 2020. Tr. 8. "Originally thought to be related to her migraines but now describes that the symptoms persist even as the migraines are well controlled." *Id.* She described episodic neurological symptoms persisting for a few hours to all day that start with low back pain and radiate to her spine and head, sometimes accompanied with a metal taste in her mouth that is incredibly strong. *Id.* She reported varied symptoms including locking jaw, chest pain, racing heartbeat, numbness and tingling to her arms and face, and associated tinnitus and hearing loss. *Id.* These episodes have an acute onset and currently occur multiple times a week. *Id.* She also described "having an episode during a lumbar puncture and it seemed to improve all of her symptoms." *Id.* at 8-9. Dr. Cahill noted that Plaintiff tried multiple medications such as Topamax, Zonisamide, Diamox, that proved to be ineffective.

---

[5] Idiopathic Intracranial Hypertension ("IIH"), also known as Pseudotumor Cerebri, is "a disorder most commonly seen in obese young women, characterized clinically by headache, blurred vision, and visual obscurations resulting from increased intracranial hypertension; on clinical examination, papilledema is detected but on neuroimaging studies there is no evidence of an intracranial mass lesion and the ventricles are either of normal size or small; if untreated, occasionally results in permanent visual loss; of an unknown cause." Stedmans Medical Dictionary 735220 (2014).

Signs and symptoms may include: "[o]ften severe headaches that might originate behind your eyes; [a] whooshing sound in your head that pulses with your heartbeat; [n]ausea, vomiting or dizziness; [v]ision loss; [b]rief episodes of blindness, lasting a few seconds and affecting one or both eyes; [d]ifficulty seeing to the side; [d]ouble vision; [s]eeing light flashes; [and/or] [n]eck, shoulder or back pain." https://www.mayoclinic.org/diseases-conditions/pseudotumor-cerebri/symptoms-causes/syc-20354031#symptoms (last visited Mar. 17, 2025).

> Pseudotumor cerebri . . . occurs when the pressure inside your skull (intracranial pressure) increases for no obvious reason. It's also called idiopathic intracranial hypertension.
> Symptoms mimic those of a brain tumor. The increased intracranial pressure can cause swelling of the optic nerve and result in vision loss. Medications often can reduce this pressure and the headache, but in some cases, surgery is necessary.
> Pseudotumor cerebri can occur in children and adults, but it's most common in women of childbearing age who are obese.

https://www.mayoclinic.org/diseases-conditions/pseudotumor-cerebri/symptoms-causes/syc-20354031 (last visited Mar. 17, 2025).

4

*Id.* at 9. She noted that Plaintiff's weight was around 190 pounds in 2020 when symptoms first occurred. At the time of the examination, she weighed 241 pounds and reported that her symptoms have progressively worsened.[6] *Id.* at 9, 11. Of note, reported symptoms included hearing loss and tinnitus, visual disturbance, back and neck pain, dizziness, weakness and headaches. *Id.* at 9. The doctor entered the following assessment and plan:

> 34-year-old woman with a history of low back pain, neck and headache, and dizziness, blurred vision, fullness in her stomach, racing heartbeat, visual changes, sensation of metal in her mouth. We discussed the long differential. Because these episodes are frequent and include autonomic features reported concern for temporal lobe epilepsy. Recommend EEG routine. Symptoms also improved with spinal tap. We discussed the role of weight in drainage of CSF [cerebrospinal fluid]. Recommend weight loss. We discussed the risks and benefits of Ozempic. Patient is agreeable to start the medication today. Get additional nutritional labs. Patient was agreeable to return in 3 months.

Tr. 11-12.

The evidence submitted to the Appeals Council also included a July 24, 2023, Medical Source Statement from her primary care physician Dr. Marc Raad, opining that Plaintiff was unable to work on a full or part-time basis due to headaches, thyroid, extreme fatigue and Fibromyalgia. Tr. 24-26 (DDS Employment Services Medical Exemption Report). The doctor noted that diagnoses of Fibromyalgia and NPH [normal pressure hydrocephalus].[7] Tr. 24.

---

[6] At the time of the ALJ's determination, Plaintiff was 5'2" and weighed approximately 220 pounds and had a body mass index over 40. Tr. 46. The ALJ determined that obesity was a severe impairment at Step Two. *Id.* "This obesity rating and its effects were considered when evaluating the claimant's other impairments under the listings. However, even with this consideration, no listing is met." *Id.*

[7] "Hydrocephalus is the buildup of fluid in cavities called ventricles deep within the brain. The excess fluid increases the size of the ventricles and puts pressure on the brain. Cerebrospinal fluid usually flows through the ventricles and bathes the brain and spinal column. But the pressure of too much cerebrospinal fluid can damage brain tissues and cause a range of

5

The Appeals Council found that the "additional evidence did not relate to the period at issue. Therefore, it does not affect the decision about whether you are disabled beginning on or before March 24, 2023." Tr. 2.

On February 5, 2024, the Appeals Council denied Plaintiff's request for review making ALJ Alger's March 24, 2023 decision final and reviewable by this court. Tr. 1. On April 2, 2024, Plaintiff sought judicial review of the Commissioner's decision. ECF No. 1.

## II.   APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses a residual functional capacity ("RFC") assessment to determine whether the claimant can perform any of his or her "past relevant work." *Id.* At Step Five, the ALJ addresses "whether there are significant

---

symptoms related to brain function." https://www.mayoclinic.org/diseases-conditions/hydrocephalus/symptoms-causes/syc-20373604 (last visited Mar. 17, 2025).

numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proof at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error. In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

**III.     DISCUSSION**

Plaintiff moves to reverse the decision of the Commissioner or for remand for further proceedings. ECF No. 17. Plaintiff asserts six arguments in support of her motion: (1) the case should be remanded to evaluate new and material evidence of a belated, retrospective diagnosis, ECF 17-1 at 2-5 (claim 1); (2) remand is warranted to evaluate her primary headache disorders consistent with SSR 19-4, *id.* at 5-14 (claim 2); (3) failure to properly weigh the objective medical evidence and opinion evidence, *id.* at 14-27 (claims 3 and 4); (4) failure to properly assess Fibromyalgia Syndrome consistent with SSR 12-2p, *id.* at 27-31 (claim 5); and (4) remand is warranted to incorporate all of Plaintiff's documented limitations and symptoms into the RFC, *id.* at 31-44 (claim 6). The Commissioner disagrees with each of these arguments and argues that the ALJ's decision was free of legal error and supported by substantial evidence. ECF No. 25.

**A.  Supplementary Evidence Submitted to the Appeals Council**

Plaintiff first argues that her case should be remanded to the Secretary for consideration of new medical evidence that relates to her period of disability. ECF No. 17-1 at 2-5. She contends that although the new medical evidence is dated after the ALJ's decision, it is nonetheless relevant

to her claim of disability because the records illustrate the seriousness of her medical impairment, that although not diagnosed, existed at the time of her administrative hearing. The Court agrees.

It is well established that the Appeals Council must consider additional evidence submitted by a claimant after the ALJ's decision so long as it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). The Regulation further provides that the "Appeals Council will only consider evidence . . . if [the claimant] show[s] good cause for not informing [the Social Security Administration] about or submitting the evidence." 20 C.F.R. §§ 404.970(b), 416.1470(b). "Good cause" exists if the Social Security Administration "misled" the claimant, the claimant had a limitation that prevented her from submitting the evidence, or "[s]ome other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control prevented [the claimant] from submitting the evidence earlier."[8] *Id.* "[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Lesterhuis v. Colvin,* 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996)).

The evidence submitted to the Appeals Council was new and material. Here, the Appeals Council erred when it failed to address the treatment record from Dr. Cahill and the Medical Source Statement from Dr. Raad. These are clearly "new" because they were neither cumulative of evidence in the record nor had they been considered at an earlier stage of the administrative process. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5); *see Anthony P.B. v. Comm'r of Soc. Sec.,* No.

---

[8] Examples of "unusual, unexpected, or unavoidable circumstance[s] . . . include, but are not limited to" serious illness of the claimant, a death or serious illness in the claimant's immediate family, or destruction of records. 20 C.F.R. §§ 404.970(b), 416.1470(b).

19-CV-00947, 2021 WL 288769, at *3 (W.D.N.Y. Jan. 28, 2021); *Rodgers v. Saul,* No. 3:19-CV-653 (JCH), 2020 WL 13551952, at *6 (D. Conn. May 28, 2020) ("New evidence is any evidence that has not been considered previously during the administrative process.") (internal quotation marks and citation omitted); *McIntire v. Astrue*, 809 F. Supp. 2d 13, 21 n.8 (D. Conn. 2010) ("It is important to note that the requirement for 'new and material' evidence described by the Regulations in the cited section is distinct from the 'new evidence which is material' described under sentence six remand, 42 U.S.C. § 405(g), most notably because the contemplated evidence is 'new at a different time in the course of the administrative proceeding and judicial review.'").

Here, the evidence submitted is new, as it provided information that had not been considered by the ALJ, including an explanation why years of treatment for migraines were essentially ineffective. The new evidence strongly suggests that Plaintiff's symptoms were not diagnosed correctly and explains why her symptoms persisted despite treatment. In addition, the symptoms that led to the diagnosis of IIH were clearly present in the treatment records submitted to the ALJ, and were described in detail by Plaintiff in her testimony before the ALJ.

The new evidence is material because it is "relevant to the time period for which benefits have been denied and . . . probative, meaning it provides a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently." *Velez v. Berryhill*, No. 3:18-CV-01024 (SALM), 2019 WL 2052013, at *5 (D. Conn. May 9, 2019) (quoting *McIntire,* 809 F. Supp. 2d at 21); *Anthony P.B.* 2021 WL 288769, at *3 ("evidence is 'material' when it relates to the period on or before the date of the ALJ's decision, and is probative, meaning there is 'a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'") (quoting *Pollard*, 377 F.3d at 193). As set forth above, the record demonstrates that these symptoms were reported

by Plaintiff during the disability period under review and treatment was ineffective in addressing her complaints. Importantly, the ALJ identified obesity as a severe impairment and found that although "the record does not show significant limitations in functioning alone, [he] considered the exacerbating effect of her obesity on her fibromyalgia when formulating the residual functional capacity, consistent with SSR 19-2p." Tr. 46, 48.

The new IIH diagnosis and reported symptoms sheds new light on the functional limitations caused by obesity and also warrants consideration in formulating an RFC. *See Lisa v. Sec'y of Dep't of Health & Hum. Servs. of U.S.,* 940 F.2d 40, 44 (2d Cir. 1991) ("[w]hen . . . a diagnosis emerges after the close of administrative proceedings that sheds considerable new light on the seriousness of [a claimant's] condition, evidence of that diagnosis is material and justifies remand.")(citing *Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985)(remanding for Secretary to consider medical report supplying new diagnosis); *Wagner v. Sec'y of Dep't Health & Human Servs.*, 906 F.2d 856 (2d Cir. 1990)(reversing Secretary for failing to give appropriate weight to retrospective diagnosis for consideration of which this court had previously remanded); and *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir 1988) (recognizing possibility that retrospective diagnosis may reveal depth of illness existing but not fully appreciated at time of prior hearing, and remanding to district court to determine in first instance whether evidence should be presented to Secretary.)).

There is a reasonable probability that the additional evidence would change the outcome of the decision. *See Rogers,* 2020 WL 13551952, at *7 (finding "reasonable probability" standard met where new treating physician letter concluded claimant was "unable to meet competitive standards" in areas of attendance, attention, pace, and dealing with stress."); *Pollard*, 377 F.3d at 193 ("The concept of materiality requires . . . a reasonable possibility that the new evidence would

have influenced the [Commissioner] to decide claimant's application differently.") (quoting *Tirado*, 842 F.2d at 597). The record during the disability period under review confirms the presence of symptoms suggesting IIH. Moreover, the new diagnostic evidence presents "a reasonable possibility of influencing the Secretary to decide her application differently." *Lisa,* 940 F.2d at 44. ("This evidence would suggest that [Claimant] had an impairment substantially more severe than was previously diagnosed. The proffer would also substantially bolster the credibility of Lisa's subjective complaints.").

For example, on May 28, 2021, Plaintiff presented to the emergency department at Hartford Hospital with left posterior headache and numbness on the left side of her face and left leg. Tr. 338, 341. Notably, Plaintiff reported she suffered headaches and related symptoms since February rendering her unable to work. Tr. 342. "Physical examination shows that she has decreased sensation of her left face and left arm in comparison to her right." *Id.* Her neurological examination was otherwise intact. *Id.* The doctor noted that she did "not have a history of migraine headaches, . . .could be [possible] seizure versus *idiopathic intracranial hypertension*." *Id.* (emphasis added). A lumbar puncture was performed on August 18, 2021, an 8 cc of clear, colorless cerebrospinal fluid was collected and sent to the laboratory, noting an elevated opening pressure at 27.8 cm. Tr. 756. On September 1, 2021, Plaintiff consulted neurologist, Dr. Ashmanie Mahatoo. The doctor reviewed her medical chart and noted CSF [cerebrospinal fluid] testing on August 18, 2021. Tr. 417, 422. The doctor's assessment states, in relevant part, that Plaintiff recently had CSF testing with OCB [oligoclonal bands] results still pending. She reported she underwent a spinal tap with an opening pressure of 26 and denied symptoms *suggestive of IIH*. Tr. 422 (emphasis added). The doctor's recommended plan included "Primary neurologist may consider further workup of . . . elevated CSF opening pressure." Tr. 422. At a follow-up neurology appointment on September 22,

2021, Dr. Cara Pittari noted that the "[l]umbar puncture results show CSF is negative for oligoclonal bands or other significant findings" suggestive of MS. Tr. 992. The doctor did not address the elevated CSF pressure. She summarized that "[s]o far the patient's testing including MRIs of her brain, C-spine and T-spine and EEGs have all been normal. Lumbar puncture results show CSF is negative for oligoclonal bands or other abnormalities EMG/NCS with Dr. Fattahi was normal per patient in the UE and LE. As I told her last time she may have complex migraines. Would recommend she try Topamax." Tr. 994.

Indeed, the medical record is replete with reported symptoms that, when considered in light of the retrospective diagnosis of IIH, establish a "reasonable probability that the additional evidence would change the outcome of the decision."[9] *See* ECF No. 17-2 (medical chronology).

Plaintiff meets the "good cause" standard under 20 C.F.R. §§ 404.970(b), 416.1407(b) because she was diligent in seeking medical treatment, but she had no control over the medical provider's retrospective diagnosis of her impairment. *See Tolany,* 756 F.2d at 272 (good cause shown where new diagnosis was based on recent neurological evaluation and assessment of response to medication required observation period); *Lisa,* 940 F.2d at 44 ("Good cause" for failing to present evidence in a prior proceeding exists where, as here, the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the

---

[9] A review of Plaintiff's medical chronology confirms the presence of symptoms for IIH. *See e.g.,* ECF No. 17-2 ¶ 4 (June 4, 2020-reporting symptoms of dizziness, sensations of movement and spinning, loss of balance, tinnitus, nausea and vomiting, headache and neck pain.); ¶¶ 5-23 (2020-multiple emergency department visits and treatment records, for among other things, daily headaches, left arm numbness, neck pain radiating to her head, pain); ¶¶ 24-74 (2021-emergency department visit for headache and numbness, multiple medical records recording complaints of migraine headaches, pain, dizziness, back pain, dizziness, numbness of right side of face, tingling of arms, neurology consults, lumbar puncture to rule out MS, possible diagnosis of complex migraines); ¶¶ 72-140 (2022-reporting severe headaches, numbness to arms, neck and low back pain, referral to pain management, noting Topamax, Emgality injections were ineffective for migraines); ¶¶141-142 (2023-reporting back pain, dizziness, pain levels limiting function).

pendency of that proceeding."). In summary, the Court considers the January 26, 2024 treatment record from Dr. Cahill "new" and "material" evidence that meets the criteria of 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

Accordingly, this case is remanded to the Commissioner to reevaluate Plaintiff's claims in light of Dr. Cahill's January 2024 treatment record. *See Rodgers*, 2020 WL 13551952, at *8 (following numerous courts in this Circuit concluding that the "Appeals Council's failure to consider evidence that meets the criteria of 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) warrants remand.") (citing cases); *Tolany*, 756 F.2d at 272 ("a remand will enable the Secretary to clarify the unarticulated assessment that she contends the ALJ implicitly made of the claimant's pain and the relationship of that pain, in conjunction with her other symptoms, to her overall ability to engage in any gainful activity.").

In light of the Court's findings above, it need not reach the merits of Plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings **(ECF No. 17)** is **GRANTED** and Defendant's Motion for an Order Affirming the Decision of the Commissioner **(ECF No. 25)** is **DENIED.**

The Clerk of the Court is directed to enter judgment in favor of Plaintiff.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. ECF No. 2,10. Appeals may be

made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). It is so ordered.

                                                */s/, Maria E. Garcia, USMJ*
                                                Hon. Maria E. Garcia
                                       United States Magistrate Judge